IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | |
|---|---|
| Cynthia F. Cox, | Civil Action No. 5:19-cv-2067-CMC |
| Plaintiff, | |
| vs. | **OPINION AND ORDER** |
| Andrew Saul, Commissioner of Social Security Administration, | |
| Defendant. | |

This appeal, which involves a claim by Plaintiff for Disability Insurance Benefits ("DIB") under the Social Security Act, is before the court for the second time. In the first appeal, the court adopted Magistrate Judge Kaymani D. West's March 29, 2018 Report and Recommendation to vacate the August 28, 2015 decision of Administrative Law Judge Tammy Georgian ("ALJ Georgian") and to remand the case to the Commissioner of Social Security to, inter alia, reconsider and weigh the opinions of Plaintiff's treating psychiatrist, Dr. Joseph W. Walters, III ("Dr. Walters"). R.[1] at 689-90. On remand, ALJ Georgian again denied Plaintiff's claim for DIB. R. at 659-72.

On July 24, 2019, pursuant to 42 U.S.C. § 405(g), Plaintiff filed the instant complaint seeking judicial review of ALJ Georgian's decision on remand.[2] ECF No. 1. The matter was

---

[1] Citations to the Record are denoted by "R."

[2] After a case is remanded to the Commissioner, "the decision of the [ALJ issued following the remand] will become the final decision of the Commissioner . . . unless the Appeals Council assumes jurisdiction of the case." 20 C.F.R. § 404.984(a). The Appeals Council may assume jurisdiction of the case through written exceptions to the ALJ's decision or on its own initiative. Id. § 404.984(a)-(c). Plaintiff neither filed exceptions to ALJ Georgian's decision on remand nor did the Appeals Council assume jurisdiction on its own initiative.

referred to a United States Magistrate Judge for a report and recommendation. *See* 28 U.S.C. § 636(b)(1)(B) (authorizing the district court to, among other things, direct a magistrate judge to submit a report to the district court with proposed "recommendations for the disposition" of a pending matter); D.S.C. Local Rule 83.VII.02(A) (noting after the briefing schedule is established in social security cases, "the case will be referred to a magistrate judge for either a recommendation or a final order, dependent upon the consent of the parties and the district court"). On July 14, 2020, Magistrate Judge Kaymani D. West issued a report and recommendation ("Report"), recommending ALJ Georgian's decision be reversed and the case be remanded to the Commissioner with instructions to award benefits. ECF No. 21.

On July 8, 2020, the Commissioner filed objections to the Report, ECF No. 23, to which Plaintiff filed a reply on August 8, 2020. ECF No. 24. For the reasons stated below, the court adopts the Report, reverses the decision of the Commissioner, and remands the case to the Commissioner with instructions to award benefits.

## **Standard**

### *1) Court's Review of Magistrate Judge's Report and Recommendation*

A magistrate judge only makes a recommendation to the court. *Mathews v. Weber,* 423 U.S. 261, 270 (1976). Such recommendation is afforded no "presumptive weight," which necessarily leaves the "authority and the responsibility [of] mak[ing] an informed, final determination" with the court. *Id.* at 271.

2

Within fourteen days after being served with the magistrate judge's report and recommendation, any party may object to the recommendation.[3] 28 U.S.C. § 636(b)(1). If a timely objection is filed, the court must make a *de novo* determination of those portions of the recommendation to which objection is made. *Id.* After conducting this *de novo* review, the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge, or recommit the matter to the magistrate judge with instructions. *Id.* In the absence of an objection, the court may accept the recommendation of the magistrate judge provided a review of the record reveals no clear error.[4] *Diamond v. Colonial Life & Acc. Ins. Co.,* 416 F.3d 310, 315 (4th Cir. 2005).

### 2) Court's Review of Agency Decision

The court is authorized to review the Commissioner's denial of DIB under 42 U.S.C. § 405(g). *Mastro v. Apfel,* 270 F.3d 171, 176 (4th Cir. 2001). Such review neither involves a trial *de novo*, *Vitek v. Finch*, 438 F.2d 1157, 1157 (4th Cir. 1971), nor a *de novo* review of the evidence, *Smith v. Schweiker,* 795 F.2d 343, 345 (4th Cir. 1986). Rather, the court's review is "narrow," *id.*, and is limited to whether the Commissioner's factual findings are supported by substantial

---

[3] A party's objection must be made with "sufficient specificity so as reasonably to alert the district court of the true ground for the objection." *United States v. Midgette,* 478 F.3d 616, 622 (4th Cir 2007).

[4] When a party receives notice of the consequences of failing to comply with the timely objection filing requirement, the failure to file a timely objection results in a waiver of that objection in the court of appeals. *Diamond,* 416 F.3d at 315–16; *Wells v. Shriners Hosp.,* 109 F.3d 198, 201 (4th Cir. 1997); *Wright v. Collins,* 766 F.2d 841, 845–46 (4th Cir. 1985).

3

evidence and whether the Commissioner applied the correct legal standards. *Walls v. Barnhart,* 296 F.3d 287, 290 (4th Cir. 2002).

"The phrase 'substantial evidence' is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (quoting *T-Mobile South, LLC v. Roswell,* 135 S. Ct. 808, 815 (2015)).  In applying the substantial evidence standard, the "court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id.* (alteration marks in original) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).  The "evidentiary sufficiency" necessary to meet this standard is "not high." *Id.* Substantial evidence, the Fourth Circuit has said, "consists of more than a mere scintilla of evidence but may be less than a preponderance." *Smith v. Chater,* 99 F.3d 635, 638 (4th Cir. 1996).  "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co.*, 305 U.S. at 229).

Although considerable deference is afforded to the Commissioner's factfinding, the court does not "mechanically accept[]" his findings. *Flack v. Cohen,* 413 F.2d 278, 279 (4th Cir. 1969). Rather, the "statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Id.*  Indeed, "courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek,* 438 F.2d at 1157-58.

4

Along a similar vein, to meaningfully perform substantial evidence review, the record must set forth the basis for the Commissioner's decision. *Radford v. Colvin,* 734 F.3d 288, 295 (4th Cir. 2013). The Commissioner's decision "should include a discussion of which evidence [he] found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Id.*; *see also* 42 U.S.C. § 405(b)(1) (noting the Commissioner's decision must "contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based"). Put another way, the Commissioner's decision must identify the evidence that supports his conclusion and "build an accurate and logical bridge from [that] evidence to his conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). There is, however, no hard and fast rule the Commissioner must specifically refer to every piece of evidence in the record in his decision. *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014).

## **Background**

Plaintiff applied for DIB with the Social Security Administration ("SSA") on January 10, 2013, alleging disability as of May 1, 2011[5] due to severe impairments of anxiety disorder and affective disorder. R. at 22. Plaintiff's application was denied initially and upon reconsideration. R. at 99, 117. Plaintiff requested a hearing, R. at 131-32, which was held before ALJ Georgian on

---

[5] Plaintiff previously filed two claims for DIB, one in 1994 and the other in 2011. R. at 228, 278. Both claims were denied at the initial level and not appealed. *Id.*

August 3, 2015. R. at 38-73. At the hearing, Plaintiff, Plaintiff's mother, and Vocational Expert Thomas C. Neal, Ph. D. ("VE Neal") testified. R. at 41-71. On August 28, 2015, ALJ Georgian issued an unfavorable decision finding Plaintiff not disabled. R. at 20-32. Plaintiff requested review by the Appeals Council, R. at 14-16, which denied review, R. at 1-3, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you or another party file an action in Federal district court, or the decision is revised.").

Plaintiff then appealed the unfavorable decision to this court, which, upon the recommendation of the Magistrate Judge, R. at 702-28, reversed the Commissioner's decision and remanded for further administrative proceedings so ALJ Georgian could reconsider and weigh the opinions of Dr. Walters and for related issues. R. at 689-90. On remand, Plaintiff amended her alleged onset date to January 7, 2013. R. at 845. A second administrative hearing was conducted before ALJ Georgian on March 7, 2019, at which only Plaintiff testified. R. at 680-88. On May 29, 2019, ALJ Georgian denied Plaintiff's DIB claim. R. at 659-72. Following the Appeals Council's declination to assume jurisdiction, Plaintiff filed the instant action in this court. ECF No. 1.

## Discussion

The Magistrate Judge recommends the court reverse ALJ Georgian's decision because ALJ Georgian did not adequately support her reasons for discounting the opinions of Dr. Walters, as she failed to identify persuasive contrary evidence to rebut his opinions. ECF No. 21 at 20-21. In

6

particular, the Magistrate Judge posits ALJ Georgian erred when she: (1) concluded Dr. Walters'

statements of disability were inconsistent with Plaintiff's activities; (2) discounted Dr. Walters'

opinions because they were not based on discussions with vocational consultants; (3) discounted

Dr. Walters' opinions because they do not reflect an effort on Dr. Walters' part to ascertain

Plaintiff's rehabilitative potential; and (4) discounted Dr. Walters' September 5, 2018 opinions

contained in a Treating Psychiatrist's Statement because they did not state functional limitations.

*Id.* at 18-21.  Ultimately, the Report recommends remanding for an award of benefits because the

case has been pending since 2013, has been through the appeals process previously, and "[r]emand

for reconsideration is unlikely to serve any useful purpose."  *Id.* at 21.  The Report therefore did

not address Plaintiff's remaining claims of error.  *Id.* at 21 n.7.

The Commissioner objected, arguing the Report misinterpreted ALJ Georgian's

consideration of Dr. Walters' opinions and substituted her own judgment for that of ALJ Georgian.

ECF No. 23 at 1.  He requests the court decline to adopt the Report and affirm the Commissioner,

or, in the alternative, remand for further administrative action.  *Id.*  In particular, he posits the

Magistrate Judge "impermissibly appears to reweigh the evidence in regards to the weight the ALJ

gave to Dr. Walter's conclusory statements that Plaintiff could not sustain full-time work."  *Id.* at

3.  He further posits ALJ Georgian "provided a logical bridge and drafted a residual functional

capacity supported by substantial evidence."  *Id.* at 5.  According to the Commissioner, an award

of benefits is inappropriate because "Plaintiff can work at all exertional levels, in simple routine

tasks, with only occasional contact with the public, occasional changes to the work setting and

occasional decision."  *Id.* at 6.

7

Plaintiff filed a reply to the Commissioner's objections, arguing the Magistrate Judge "reasonably interprets the ALJ's rationale" and requesting the court follow the Report's recommendation, including a remand for an award of benefits instead of further administrative proceedings. ECF No. 24 at 1. She asserts because this case was already remanded yet ALJ Georgian again made errors weighing Dr. Walters' opinions "despite the previous remand instructions along with the ample support" for Dr. Walters' opinions, "it is apparent that the Court should adopt the R&R, reverse the ALJ's decision, and remand for an award of benefits." *Id.* at 5.

### 1) DIB Eligibility

To be eligible for DIB under the Social Security Act, a claimant must meet four requirements. 42 U.S.C. § 423(a)(1)(A)-(B), (D)-(E). The claimant must show she: (1) is insured for such benefits; (2) has not attained retirement age; (3) has filed an application for benefits; and (4) is under a disability. *Id.* The parties agree Plaintiff has met the first three requirements; only the fourth, whether Plaintiff is disabled, is in dispute.

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[6] *Id.* § 423(d)(1)(A).

─────────────────────

[6] Under the SSA Regulations, substantial gainful activity is "work activity that is both substantial and gainful." 20 C.F.R. § 404.1572. "Substantial work activity is work activity that involves Footnote Continued . . .

8

In determining whether a claimant is disabled, the Commissioner uses a five-step, sequential evaluation process. 20 C.F.R. § 404.1520(a)(4)(i)–(v). At Step 1, the Commissioner considers whether the claimant is engaging in substantial gainful activity. *Id.* § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, the inquiry ceases and the claimant is deemed not disabled. *Id.* If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step 2 and considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments of sufficient duration, there is no further inquiry and the claimant is deemed not disabled.[7] *Id.* If the claimant does have a severe impairment or combination of impairments of sufficient duration, the Commissioner proceeds to Step 3 and determines whether that impairment or combination of impairments meets or equals one of the impairments listed in 20 C.F.R. § 404, Appendix 1.[8] *Id.* § 404.1520(a)(4)(iii). If the answer at Step 3 is yes, the claimant

---

doing significant physical or mental activities." *Id.* § 404.1572(a). "Gainful work activity is work activity that you do for pay or profit." *Id.* § 404.1572(b).

[7] Under the SSA Regulations, a severe impairment is "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). To meet the durational requirement, the impairment must last or be expected to last a continuous period of at least twelve months. *Id.* § 404.1509.

[8] The SSA Regulations include an extensive list of impairments ("Listed Impairments") which are considered disabling without the need to assess whether there are any jobs a claimant could perform. The Listed Impairments found at 20 C.F.R. part 404, Appendix 1, are considered severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525(a). To meet or equal one of the Listed Impairments, the claimant must establish her impairments match several specific criteria, Footnote Continued . . .

is disabled and further inquiry ceases. *Id.* If the answer at Step 3 is no, the Commissioner must determine the claimant's residual functional capacity ("RFC") before proceeding to Step 4.[9] *Id.* § 404.1520(a)(4). At Step 4, the Commissioner determines whether the claimant can perform her past relevant work ("PRW") in light of her RFC.[10] *Id.* § 404.1520 (a)(4)(iv). If the claimant can perform her PRW, the claimant is deemed not disabled and the inquiry ends. *Id.* If the claimant cannot perform her PRW, the Commissioner at Step 5 determines whether she can perform other work found in the national economy commensurate with her age, education, experience, and RFC. *Id.* § 404.1520(a)(4)(v).

The claimant bears the burden of proof through the first four steps of the sequential evaluation process. *Lewis v. Berryhill,* 858 F.3d 858, 861 (4th Cir. 2017). If claimant successfully clears these four evidentiary hurdles, the burden shifts to the Commissioner at Step 5 to prove "the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." *Id.*

---

*id.* § 404.1525(c)-(e), or be "at least equal in severity and duration to [those] criteria of any listed impairment," *id.* § 404.1526(a).

[9] RFC is "the most the claimant 'can still do despite' physical and mental limitations that affect her ability to work." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (quoting 20 C.F.R. § 416.945(a)(1)). *See also* 20 C.F.R. § 404.1545(a)(1) (noting RFC is "the most you can still do despite your limitations"). In assessing the claimant's RFC, the Commissioner considers "all the relevant evidence in [the] case record," 20 C.F.R. § 404.1545(a)(1), and "all of the claimant's medically determinable impairments," *id.* § 404.1545(a)(2).

[10] PWR is "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 404.1560(b)(1).

at 862 (quoting *Mascio*, 780 F.3d at 635). At this final step, the Commissioner usually offers "evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." *Id.* (quoting *Mascio*, 780 F.3d at 635). If the Commissioner meets his burden, the claimant is found not disabled and the application for benefits is denied. *Id.*

### 2) ALJ Georgian's Decision on Remand

At Step 1 of the five-step sequential evaluation process, ALJ Georgian found Plaintiff had not engaged in substantial gainful activity during the period from her amended alleged onset date of January 7, 2013, through her date of last insured of September 30, 2018.[11] R. at 661. At Step 2, ALJ Georgian determined Plaintiff's history of affective disorder and anxiety disorder were severe impairments of sufficient duration. R. at 662. However, at Step 3, ALJ Georgian found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments in 20 C.F.R. Part 404, Appendix 1. R. at 662-64.

Prior to moving to Step 4, ALJ Georgian found Plaintiff retained the RFC to perform a full range of work at all exertional levels but with the following exertional limitations: "[Claimant] is restricted to simple routine tasks, not at a production-rate pace, with only occasional contact with the general public, only occasional changes to the work setting, and occasional decision making." R. at 664. In making her RFC findings, ALJ Georgian considered the voluminous

---

[11] During the relevant timeframe, Plaintiff worked part-time at St. Andrew By-The-Sea United Methodist Church. R. at 661. Her highest gross yearly earnings were in 2013 ($3,802.11); her lowest were in 2018 ($1,203.20). *Id.*

11

record, including: (1) Plaintiff's testimony concerning her symptoms, mental impairments, work history, and daily activities; (2) her medical records; (3) the testimony of Plaintiff's mother; and (4) the medical opinion evidence. R. at 664-70. According to ALJ Georgian, her RFC assessment was supported by

> the objective medical evidence of record, including the claimant's intact memory and concentration during examinations, her part-time work throughout the relevant period, her admitted capability for a broad range of daily activities, her gym routine and reported interaction with family and friends, and the opinion of Dr. Walters that the claimant can function with limited work stress.

R. at 670.

At Step 4, relying on VE Neal's 2015 hearing testimony the demands of Plaintiff's PRW exceeded her RFC, ALJ Georgian found Plaintiff could not perform her PRW as either an activities director/recreation supervisor or health aide. R. at 670. At Step 5, again relying on the testimony of VE Neal, ALJ Georgian found, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy she could perform, namely, that of cleaner, laundry worker, and laundry garment marker. R. at 671. In light of her findings at Step 5, ALJ Georgian found Plaintiff was not under any disability during the relevant timeframe. R. at 671-72.

### 3) ALJ Georgian's Assessment of Dr. Walters' Medical Opinions

At the heart of this case is ALJ Georgian's assessment of the medical opinions rendered by Plaintiff's treating physician, Dr. Walters. Plaintiff argues ALJ Georgian improperly assessed Dr. Walters' opinions by offering reasons (1) unrecognized by case law or the SSA Regulations and (2) unsupported by substantial evidence. ECF No. 11 at 33-40. In response, the Commissioner

12

argues ALJ Georgian properly assessed the opinions of Dr. Walters because the opinions were inconsistent with the record and "devoid of any specific enumeration of Plaintiff's actual functional abilities." ECF No. 13 at 17. In resolving the issue of ALJ Georgian's assessment of Dr. Walters' opinions, the Magistrate Judge sided with the Plaintiff, concluding ALJ Georgian improperly assessed the opinions for a variety of reasons. ECF No. 21 at 18-21. The Commissioner objects, primarily on the basis the Magistrate Judge impermissibly reweighed the evidence, ECF No. 23 at 3, while the Plaintiff posits the Magistrate Judge's reasoning is sound. ECF No. 24 at 3-5. Before addressing the Commissioner's objections, it is helpful to set forth the standards governing the assessment of the opinions of treating physicians, the substance of Dr. Walters' opinions, and how ALJ Georgian's decision on remand addresses these opinions.

### a) Opinions of Treating Physicians Generally

"Medical opinions" typically are statements from physicians or acceptable medical sources that "reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). The amount of weight accorded to opinions is well-settled.[12] Generally, the Commissioner will give more weight to the opinion of a

---

[12] Plaintiff filed her application for DIB in January 2013. Since then, the SSA has adopted new regulations about the weight afforded to treating physicians' opinions, but those regulations only apply to claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c (stating "[f]or claims filed before March 27, 2017, the rules in § 404.1527 apply"); *see also* 82 Fed. Reg. 15,263 (stating the rescissions of SSR 96-2p, 96-5p, and 06-3p were effective for "claims filed on or after March 27, 2017").

treating physician (or other acceptable treating source) who has examined the claimant than to a non-examining physician. *Id.* § 404.1527(c)(1). This allocation of weight makes sense for at least two reasons. First, treating physicians

> are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.* § 404.1527(c)(2). Second, the opinion of a treating physician often "reflects a judgment based on continuing observation" for, in some cases, many years. *Campbell v. Bowen*, 800 F.2d 1247, 1250 (4th Cir. 1986).

As a result, as long as the medical opinion of the claimant's treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record," such opinion must be given "controlling weight." 20 C.F.R. § 404.1527(c)(2). "By negative implication, if a [treating] physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

An analysis of a treating physician's medical opinion is, therefore, sequential. The Commissioner must first consider whether the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." Social Security Ruling ("SSR") 96–2p, 1996 WL 374188, at *2. If the answer to this question is no, then the inquiry at this stage is complete. *Id.* If the Commissioner finds the opinion is well-supported, he must then confirm the opinion is

14

consistent with other substantial evidence in the record. *Id.* In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight. *Id.* SSR 96–2p contemplates the Commissioner will make a finding as to whether a treating physician's opinion is entitled to controlling weight.[13] *Id.*

It follows the Commissioner is not required to accept a treating physician's medical opinion at all, much less do so wholesale. The Commissioner must, however, provide sufficient explanation of his final determination to provide a reviewing court with the benefit of the factual basis underlying the ultimate finding of disability. *Radford,* 734 F.3d at 295. To that end, the Commissioner must set forth the reasons for crediting or discrediting relevant or pertinent medical evidence. *Id.* (noting the Commissioner's decision "should include a discussion of which evidence [he] found credible and why"); *Hines v. Barnhart*, 453 F.3d 559, 566 (4th Cir. 2006) ("The deference accorded an ALJ's findings of fact does not mean that we credit even those findings contradicted by undisputed evidence."). Although the Commissioner may properly accept some parts of the medical evidence and reject other parts, he must consider all of the evidence and give

---

[13] SSRs are "final opinions and orders and statements of policy and interpretations" the SSA has adopted. 20 C.F.R. § 402.35(b)(1). Once published, these rulings are binding on all components of the SSA. *Heckler v. Edwards*, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." *Pass v. Chater*, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

some reason for discounting the evidence he rejects.[14]  *Cf. Lewis*, 858 F.3d at 869 ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry pick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.") (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)).  Moreover, when the medical opinion of a treating physician is not given controlling weight, the Commissioner must consider certain factors in determining the weight to give such opinion, including the examining relationship, the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency of the opinion with the record, specialization, and other factors which tend to support or contradict the opinion.  20 C.F.R.  § 404.1527(c)(2)-(6).

Notably, not every physician's opinion is a "medical opinion" under 20 C.F.R. § 404.1527(a)(1).  For example, a treating physician's opinion an applicant is "disabled" or "unable to work" is not an opinion that must be given controlling weight or special significance.  *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005); *Morgan v. Barnhart*, 142 F. App'x. 716, 722-23 (4th Cir. 2005); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Adorno v. Shalala*, 40 F.3d 43, 47-48 (3d Cir. 1994); *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994); *see also* SSR 96-5p, 1996 WL 374183, at *2 ("However, treating source opinions on issues that are reserved to the Commissioner are never entitled to controlling

---

[14] Thorough findings by the Commissioner also instill confidence and transparency in the benefits disposition process by letting claimants "understand the disposition of their cases."  *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999).

weight or special significance.").  Nevertheless, a treating physician's opinion on an issue reserved to the Commissioner "must never be ignored."  SSR 96-5p, 1996 WL 374183, at *3.  The Commissioner "must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record" by applying factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6).[15]  *Id.*

### b) Opinions of Dr. Walters

Dr. Walters treated Plaintiff both prior to and after Plaintiff's alleged onset date of January 7, 2013.  His detailed records and treatment notes reflect the severity of Plaintiff's affective and anxiety disorders and how working beyond several hours a week would lead Plaintiff to experience severe mood episodes.  For example, in July 2013, Dr. Walters noted Plaintiff's history and work experience have caused "severe mood episodes."  R. at 365.  In September 2013, Dr. Walters observed Plaintiff "has had critical mood episodes in the past that were triggered by her work environment and inability to cope—these episodes have included panic attacks and some psychotic features with paranoia."  R. at 366.  Dr. Walters observed in January 2014 Plaintiff was doing relatively well only "because she isn't stressed . . . and her history is such that work stress has led to major psychological turmoil."  R. at 367.  In May 2014, Plaintiff's mood and anxiety were okay according to Dr. Walters, but he noted her history is "such that she has had major mood and anxiety

---

[15] The court notes 20 C.F.R. § 404.1527 was amended in 2012 with the subsection formerly labeled as § 404.1527(d) referenced in SSR 96-5p being renumbered as § 404.1527(c), but without any substantive change.  *See How We Collect and Consider Evidence of Disability*, 77 Fed. Reg. 10,651, 10,656 (Feb. 23, 2012) (codified at 20 C.F.R. pt. 404).

relapse in the context of work stress." R. at 537. Notes from February 2016 indicate Plaintiff reported doing well for the past couple of months and continued "to work the very part-time job at the church." R. at 897. Dr. Walters noted in October 2016 Plaintiff increased her medications including Ambien "as she has a great increase in agitation and anxiety" possibly in relation to having recently evacuated for a hurricane. R. at 898. She was having racing thoughts along with the anxiety and "always struggles with change." *Id.* In early November 2016, she was still not doing well, with increased anxiety, sweating, inability to think clearly, and side effects. R. at 899. Dr. Walters related Plaintiff was experiencing intense anxiety and panic all day long, could not make even small decisions, and had been absent from her part-time church job for weeks. Id. Plaintiff was still unable to return to her part-time job as of late November 2016 when Dr. Walters noted that "[s]he still has significant impairment of concentration and memory" and "still appears very anxious." *Id.* Dr. Walters opined returning "to work likely would precipitate another recurrence" and thus "advised that she not work at all now." R. at 900. In August 2017, Plaintiff presented to her therapist as "significantly struggling with engaging" and with disordered thoughts. R. at 904. Plaintiff ultimately was admitted to the hospital where multiple rounds of electro-convulsive therapy ("ECT") were administered. R. at 906.

Consistent with these records and treatment notes is a July 28, 2015 letter which summarizes Dr. Walters' treatment history and opinions up to that date:

> In working with Mrs. Cox over these past six years, I have been involved in treating her during at least 5 major depressive episodes, all of which has been mixed with anxiety and paranoia to some degree. These episodes share in common symptoms that have included depressed mood, extreme anxiety and some paranoia, insomnia, crying spells, and decreased concentration and memory. During these episodes she

18

had no ability to function and would go on FMLA, with eventual job loss. She was always determined to return to work when "stable," but such return would invariably again lead to a severe depressive episode, and the cycle would continue. These most recent episodes while I was caring for her were not brief, and they would typically last 2-3 months; they occurred in April 2009, October 2009, March 2011, January 2013, and January 2015.

Over these years I have primarily been involved in managing her medication for Major Depressive Disorder - Severe, and Generalized Anxiety Disorder. In early 2013 I also referred her to psychotherapist Dr. Catherine Scott, due to her chronic instability. Despite treating her with the standard of care (medication and therapy), Mrs. Cox would still episodically have severe depressive and anxiety episodes.

It is my opinion to a degree of medical certainty that Mrs. Cox is unable to engage in sustained and substantial gainful activity. For the past 2 years she has held a very part-time job at her church nursery, only working 5-7 hours per week. Even with this minimal and very low stressed environment, she again had the episode this past January 2015. It has been my recommendation over these past two years that she continue to work at the nursery as it provides needed social interaction, but I would never advise her to seek regular full-time employment. The risk for relapse (as seen several times in her recent history) is [too] great of a risk for someone with her illnesses. A return to full-time or near full time employment would be detrimental to her mental health.

Furthermore, Mrs. Cox is on baseline medication as even when she is not in a major episode, she still has baseline anxiety. When she is in a severe episode, her medications are adjusted and require "heavier medication" (antipsychotics/mood stabilizers) to treat her symptoms; these medications are not without side effects and lead to fatigue, cognitive slowing, and a decrease in focus and concentration.

In my 13 years as a medical doctor and in my 9 years as a licensed psychiatrist, I have had to opine numerous times on patients' disability claims. My summation is that Mrs. Cox is the rare case of a person who is extremely motivated to work but serially suffers grave consequences (mental health relapse) with these efforts. It is my medical opinion that she is a disabled person who cannot work more than the current capacity of her church work.

R. at 351-52.

19

After this court remanded the case to the Commissioner, additional information was added to the record. R. at 833-920. In a letter dated September 5, 2018, Dr. Walters provided further clarification concerning how Plaintiff's medical condition affects her ability to function on a daily basis:

> I have worked with Mrs. Cox for over 9 years. She has never been motivated to be a disabled person (the prospect of being disabled has not once been on her agenda). She has always sought, when feeling reasonably well, some form of employment, with the preference for full-time employment. When she worked full-time jobs in the past, she would eventually get overwhelmed and decompensate both cognitively and emotionally. Recognizing her limitations and with my support, she has at time[s] engaged in a very limited part-time job with her church, where she helps in a daycare for a couple of Sunday hours when feeling well. I do not feel that this history of part-time church work gives credence to the suggestion that she can maintain a [full]-time job. . . . [Concerning] her going out to dinners or being active in her church . . . [i]n my practice I encourage all of my patients to engage in similar family or church-oriented activities as part of their path to wellness. But I do not feel that episodic dinners or occasional spurts of church attendance equate to employability.
>
> It has been very clear to me in my years of working with Mrs. Cox that she wishes to be well so that she could work. In reviewing her history, it is evident that she has a chronic and severe mental illness that prevents her from working. In her most severe episodes, she has true paranoia and psychosis. Her illness has been so severe that she has had electro-convulsive therapy (ECT) on 3 occasions, with the most recent treatment in August 2017 at the Medical University of South Carolina. ECT is reserved for severe mental illnesses that do not fully respond to medication management. It is my medical opinion, as evidenced by her limited activities of daily living, that she is unable to sustain full time work without relapsing, and that she is a disabled person.

R. at 885-86.

In connection with his September 5, 2018 letter, Dr. Walters completed a Treating Psychiatrist's Statement ("the Statement") of Plaintiff's mental impairments. R. at 887-93. Dr.

20

Walters diagnosed Plaintiff with generalized anxiety disorder and major depressive disorder with a history of severe episodes with psychosis.  R. at 889.

Under the "B" Functional Criteria, Dr. Walters was asked to indicate the degree to which Plaintiff had certain functional limitations since January 2013.  R. at 891.  The listed functional limitations included the ability to understand, remember, or apply information; the ability to interact with others; the ability to concentrate, persist, or maintain pace; and the ability to adapt or manage oneself.  *Id.*  Dr. Walters indicated that Plaintiff had an "extreme" limitation in each of the categories.  *Id.*

Under the "C" Functional Criteria, Dr. Walters responded to three questions regarding Listing 12.04 – Depressive, Bipolar and Related Disorders.  R. at 892.  The first question asked if there was "a medically documented history of the existence of a depressive, bipolar or related disorder over a period of at least 2 years?"  *Id.*  The second question asked if there was "medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the depressive, bipolar or related mental disorder?"  *Id.*  The third question asked if there was "marginal adjustment, that is, does the patient have minimal capacity to adapt to changes in the patient's environment or to demands that are not already part of the patient's daily life?"  *Id.*  Dr. Walters responded "Yes" to each of the three questions.  *Id.*

The final portion of the Statement asked questions regarding Plaintiff's "Ability to Sustain Work."  R. at 893.  The first question asked if Plaintiff had "been able to sustain the mental demands of full-time work at any level of skill or psychological stress since January 2013?"  *Id.*

21

Dr. Walters responded in the negative.[16]  R. at 918.  The second question asked for Plaintiff's

prognosis for returning to full-time work.  Dr. Walters indicated: "Very poor—she has not been

able to consistently function in a very low demanding church nursery job [at] 2 hours/week.  She

is highly susceptible to stress—which has led to severe episodes with anxiety/panic, depression,

and psychosis."  R. at 893.  Dr. Walters responded affirmatively to the final question asking if

Plaintiff was "capable of managing or directing the management of Social Security benefits

without a representative payee."  *Id.*

### c) ALJ Georgian's Assessment of Dr. Walters' Opinions on Remand

In her May 2019 Decision on remand, ALJ Georgian again considered Dr. Walters'

opinions and stated that she gave "little weight to the numerous summary opinions of [Dr. Walters]

. . . pertaining to the ultimate issue of the claimant's disability."  R. at 668.  ALJ Georgian stated:

> Although Dr. Walters is familiar with the claimant's condition and would otherwise
> be due deference as the claimant's treating provider, whether an individual is
> disabled is not a medical issue regarding the nature and severity of an individual's
> impairments(s) but is an administrative finding that is dispositive of a case, and is
> reserved to the Commissioner (20 CFR 404.1527).  Dr. Walters' summary
> statements of disability, while generally supported with treatment notes, are
> inconsistent with the claimant's part-time work activity and her daily routines
> throughout much of the relevant period, as she worked several days at her church,
> and attended her gym several times weekly.  Additionally, Dr. Walters' opinions
> are not based on discussions with vocational consultants, nor do they reflect an
> effort on the provider's part to ascertain the claimant's rehabilitative potential.
> Rather, throughout Dr. Walters' treatment notes, such statements are generally

---

[16] When answering this question in September 2018, Dr. Walters mistakenly answered the question
in the affirmative.  R. at 893.  In February 2019, Dr. Walters corrected his answer to this question
to reflect his actual opinion.  R. at 918.  He indicated the "correct answer was, and remains, 'no,'"
adding there were no "significant improvements" in Plaintiff's "symptoms or work-related
limitations" since he completed the Statement.  *Id.*

> responsive to the claimant's description of and reported frustrations with her disability application process, and as such, it does not appear that an objective assessment of the claimant's vocational capabilities has been made. Therefore, due to the aforementioned inconsistency and their broad scope, the undersigned gives little weight to such opinions.

*Id.*

In evaluating Dr. Walters' opinions contained in the Statement, ALJ Georgian noted Dr. Walters opined Plaintiff "has extreme limitations in all 'paragraph B' categories and has minimal capacity to adapt to changes in her environment." R. at 668. She further noted Dr. Walters supported his opinions on the basis Plaintiff "'has not been able to consistently function in a very low demanding church nursery job'" at two hours per week and "'is highly susceptible to stress.'" R. at 668-69 (quoting Dr. Walters' letter of September 5, 2108, R. at 893). Nevertheless, ALJ Georgian gave the Statement little weight because

> the opinions do not state functional limitations, making them of limited utility to the undersigned for purposes of the present decision, and they are inconsistent with the whole of the medical record, given the claimant's consistent part-time work activity since 2012, as well as her admitted capability for basic daily chores, and her intact concentration and memory during examinations.

R. at 669.

ALJ Georgian did, however, give "great weight to the September 2014 opinion of Dr. Walters that the claimant is only able to function well with limited work stress." *Id.* ALJ Georgian stated that "[w]hile the opinion is limited in scope, it addresses a functional limitation, and is consistent with the claimant's medical records, throughout which she avoided stressful situations, including work." *Id.*

### d) *Analysis*

23

The Magistrate Judge recommends that ALJ Georgian's decision be reversed because ALJ Georgian erred when she: (1) concluded Dr. Walters' statements of disability were inconsistent with Plaintiff's activities; (2) discounted Dr. Walters' opinions because they were not based on discussions with vocational consultants; (3) discounted Dr. Walters' opinions because they do not reflect an effort on Dr. Walters' part to ascertain Plaintiff's rehabilitative potential; and (4) discounted Dr. Walters' opinions contained in the Statement because they did not state functional limitations. ECF No. 21 at 18-21. The Commissioner objects to this recommendation, contending Dr. Walters' opinions are "devoid of any specific enumeration of Plaintiff's actual functional abilities" and there is "persuasive contrary evidence" in the record contradicting Dr. Walters' opinion Plaintiff had extreme limitations in all Paragraph B categories, namely, Plaintiff's daily routine and activities and the opinion of Dr. Scott C. Shaffer, Ph. D. (Dr. Shaffer), a clinical psychologist and a consultant examiner.[17] ECF No. 23 at 4. In reply, Plaintiff relies on the reasoning offered by the Magistrate Judge in the Report. ECF No. 24 at 3-5.

---

[17] At the request of the Commissioner, Dr. Shaffer saw Plaintiff for a psychological examination on October 10, 2013. R. at 497-502. Dr. Shaffer noted during the examination Plaintiff "presented numerous anxiety characteristics as she avoided eye contact, frequently moved in her chair and had some halting, deliberate speech . . . . Sometimes she rambled in her talk in a nervous fashion." R. at 501. He added, Plaintiff's "mood was worried, and she is discouraged about her situation and the panic attacks which she described as involving shortness of breath, heart palpitations and problems sleeping." *Id.* Plaintiff reported her medications were "helpful in her avoidance of panic attacks." *Id.* Dr. Shaffer noted Plaintiff had "occasionally poor" concentration and opined, "[i]n the middle of a panic attack, she would obviously have difficulty with concentration." *Id.* Dr. Shaffer summarized Plaintiff was "anxious, mildly despondent" with a "well established history of psychiatric treatment for depression and anxiety with panic attacks" and during the examination "was highly nervous with significant anxiety." *Id.* He noted Plaintiff was capable of driving, Footnote Continued . . .

24

The Report correctly identifies the shortcomings in ALJ Georgian's analysis. First, ALJ Georgian noted Dr. Walters' statements of disability were "generally supported with treatment notes" but found them inconsistent with Plaintiff's activities, namely, of working several days a week at a church and attending a gym several times per week.[18]  R. at 668.  Yet, as noted by the Magistrate Judge, ALJ Georgian "does not explain how these activities demonstrate an inconsistency" with Dr. Walters' statements because "his treatment notes reflect that Plaintiff was able to work only three-to-six hours a week in her church's nursery and on occasion she was unable to work for several weeks at a time due to exacerbations in her mental health issues."  ECF No. 21 at 18. The Magistrate Judge also correctly noted the Regulations governing mental impairments require an ALJ to consider whether a claimant's ability to complete tasks in a less demanding setting may mask the effects of a chronic mental impairment regarding her ability to work.  *See* 20

---

walking on her own, doing household chores, visiting others and performing her self-care skill, and attending church and sporting events. *Id.*  Plaintiff was functional "as long as she is not under great stress which leads to withdrawal" and "[a]lthough very capable cognitively, her concentration and timely task completion will depend on her stress level, anxiety and possible corresponding panic attacks."  R. at 501-02.  He diagnosed Generalized Anxiety Disorder (with panic attacks) and Major Depressive Disorder (by history).  R. at 502.

[18] The issue of whether a claimant is disabled is reserved to the Commissioner.  *See, e.g.*, *Ellis*, 392 F.3d at 994; *Morgan*, 142 F. App'x. at 722-23; SSR 96-5p, 1996 WL 374183, at *2.  As such, ALJ Georgian had the discretion to discount the portions of Dr. Walters' opinions which expressed an opinion on whether Plaintiff was disabled.  *See, e.g.*, *Ellis*, 392 F.3d at 994; *Morgan*, 142 F. App'x. at 722-23; SSR 96-5p, 1996 WL 374183, at *2.  Nevertheless, ALJ Georgian was required to apply the factors set forth in 20 C.F.R. § 404.1527(c)(2)-(6) to determine the extent to which the opinion was supported by the record, which includes an analysis of those portions of the opinions that discuss Plaintiff's level of functioning and the impact of her impairments.  *See* SSR 96-5p, 1996 WL 374183, at *3 (noting a treating physician's opinion on an issue reserved to the Commissioner "must never be ignored").

25

C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00(C)(6)(b) ("Your ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate your ability to complete tasks in the context of regular employment during a normal workday or work week.").  Yet, ALJ Georgian failed to consider the record as required by such Regulations.

To be sure, ALJ Georgian's determination Dr. Walters' opinions were contradicted by Plaintiff's part-time work and gym attendance is neither accurate nor reasonable.  Plaintiff works several hours per week, and Dr. Walters' opinions stress, and his treatment notes illustrate, Plaintiff struggles to sustain work activities and essential job functions for even that amount of time.  *See* R. at 351-52, 365-67, 537-40, 885-86, 897-911.  Furthermore, the activities which ALJ Georgian cited as evidence of Plaintiff's functional abilities—part-time work and going to the gym—are basic life activities that do not contradict Dr. Walters' opinions.  Plaintiff's demonstrated ability to work part-time for several hours per week, go to the gym, and do chores like cooking and shopping do not contradict Dr. Walters' numerous opinions Plaintiff has significant social and cognitive limitations that severely limit her functionality in the workplace.  *Cf. Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability.  One does not need to be 'utterly incapacitated' in order to be disabled.") (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)); *Hutsell v. Massanari*, 259 F.3d 707, 713 (8th Cir. 2001) (noting participation in activities

26

with family or activities at home and at your own pace may not reflect an ability to perform at work, and "a claimant need not be bedridden to qualify for disability benefits").

Moreover, in relying on Plaintiff's part-time work and gym attendance, ALJ Georgian ignores testimony necessary to understand the scope of Plaintiff's functional abilities. *Cf. Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) (finding ALJ's selective presentation of daily activities was erroneous for failing to note plaintiff had to rest between activities, needed help to do the activities, and could not always complete the activities given her pain). For example, Plaintiff states although she drives her son to school, fixes lunches, and takes care of the family pets, Lexapro makes her drowsy, which results in her having to rest three to four hours in an eight-hour day. R. at 55, 62. In Plaintiff's SSA Functional Report, she offers additional limitations on her functional ability. Plaintiff states when she is anxious or depressed, she loses her appetite and has difficulty deciding if she should bathe or get dressed for the day. R. at 254. She also occasionally needs reminders to eat or to take her medicine. R. at 255. ALJ Georgian did not meaningfully address these limitations on Plaintiff's daily activities, and has not offered specific, cogent and convincing reasons for disregarding them.

Second, further flaws in ALJ Georgian's analysis can be found in her reasoning supporting her decisions to discount Dr. Walters' opinions because they were not based on discussions with vocational consultants and do not reflect an effort on Dr. Walters' part to ascertain Plaintiff's rehabilitative potential. The Magistrate Judge correctly points out nothing in the Regulations requires a treating physician to discuss his or her opinions with a vocational consultant or determine a claimant's rehabilitative potential. ECF No. 21 at 19. "Medical opinions" simply

27

"reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions."  20 C.F.R. § 404.1527(a)(1).  As such, they do not require the treating physician to consult with a vocational expert or to ascertain a patient's rehabilitative potential.

The Commissioner, while acknowledging the Regulations do not require a treating physician to determine a patient's rehabilitative potential, posits the Regulations do anticipate treatment will restore a claimant's ability to work.  ECF No. 23 at 4 (citing 20 C.F.R. § 404.1530).  However, § 404.1530, titled "Need to follow prescribed treatment" simply states the all-too-familiar proposition that to receive benefits a claimant must follow a course of treatment prescribed by her medical source if the treatment is expected to restore her ability to work.  20 C.F.R. § 404.1530(a), (b).  Not surprisingly, then, the Fourth Circuit has recognized the Commissioner can deny benefits if a claimant "unjustifiably refuses treatment."  *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984); *see also Pacheco v. Sullivan*, 931 F.2d 695, 697-98 (10th Cir. 1991) (discussing standards for refusal to follow prescribed treatment, indicating that benefits will cease if treatment can restore ability to work); *Wingo v. Bowen*, 852 F.2d 827, 831 n.3 (5th Cir. 1988) (noting a medical condition is not disabling if it can be remedied by surgery or medication).  Here, the Commissioner does not posit benefits can be denied on the basis Plaintiff failed to follow a course of treatment outlined for her.  But more importantly, nothing in § 404.1530 places an affirmative duty on a treating physician to assess a claimant's rehabilitative potential, so the Commissioner's reliance on § 404.1530 is altogether misplaced.

28

Finally, the Magistrate Judge correctly noted ALJ Georgian erred when she discounted Dr. Walters' opinions contained in the Statement because they did not state functional limitations. ALJ Georgian erred for the simple reason Paragraph B determines a claimant's functional limitations:

> Paragraph B of each listing (except 12.05) provides the functional criteria we assess, in conjunction with a rating scale (see 12.00E and 12.00F), *to evaluate how your mental disorder limits your functioning. These criteria represent the areas of mental functioning a person uses in a work setting.* They are: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. We will determine the degree to which your medically determinable mental impairment affects the four areas of mental functioning and your ability to function independently, appropriately, effectively, and on a sustained basis (see §§ 404.1520a(c)(2) and 416.920a(c)(2) of this chapter). To satisfy the paragraph B criteria, your mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. (When we refer to "paragraph B criteria" or "area[s] of mental functioning" in the introductory text of this body system, we mean the criteria in paragraph B of every listing except 12.05.).

20 C.F.R. § Pt. 404, Subpt. P, App. 1 12.00(A)(2)(b) (emphasis added). As such, Dr. Walters' opinions on Plaintiff's ability to understand, remember, or apply information, interact with others, concentrate, persist, or maintain pace, and adapt or manage oneself all state functional limitations. Here, Dr. Walters indicated that Plaintiff had extreme limitations in all four of the Paragraph B mental functions. R. at 891. According to the Regulations, an extreme limitation means that the individual is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(e) (discussing how Paragraph B's five-point rating scale is used to evaluate a claimant's mental disorder).

29

Equally unavailing for the Commissioner is his reliance on ALJ Georgian's conclusion the opinions in the Statement were inconsistent "with the whole of the medical record, given claimant's part-time work activity since 2012, as well as her admitted ability for basic daily chores, and her intact concentration and memory during examinations." R. at 669. The problem with such reliance is evident—Plaintiff's longitudinal history, the opinions of Dr. Walters, and Plaintiff's hospitalization records all belie ALJ Georgian's conclusion.

In sum, as Plaintiff's treating physician, Dr. Walters treated Plaintiff for almost a decade and interacted with other specialists who also treated Plaintiff. Substantial evidence supports Dr. Walters' opinions concerning Plaintiff's limitations and his opinion Plaintiff was unable to work more than several hours per week without incurring the grave risk of a major depressive episode. His opinions are reasonable, supportable, given the criteria mandated by the SSA Regulations, and corroborated by substantial evidence in the record. Substantial evidence simply does not support ALJ Georgian's reasons for discounting the opinions of Dr. Walters. *See* 20 C.F.R. § 404.1527(c)(2) (noting a treating physician's opinion is entitled to controlling weight provided it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record).

### 4) Remedy

The remaining question left for the court is one of remedy. The Magistrate Judge recommends the court reverse and remand with instructions to award benefits. ECF No. 21 at 21-22. Predictably, Plaintiff and the Commissioner take contradictory positions on the Magistrate

30

Judge's recommendation to award benefits. *Compare* ECF No. 24 at 5 (outlining Plaintiff's position) *with* ECF No. 23 at 5-6 (outlining Commissioner's position).

It is within the court's statutory authority to remand for a rehearing or to reverse the decision of the Commissioner. 42 U.S.C. § 405(g). The Fourth Circuit has instructed it is "appropriate to reverse without remanding where the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974); *see also Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987) ("Over six years have elapsed since [the claimant] filed his claim for disability benefits, and over five years have elapsed since they were wrongfully denied. . . . We are convinced, however, that if the matter were to be remanded to the Secretary for redetermination and the Secretary were to conclude again that [the claimant] was not disabled, his decision would not withstand judicial review."); *Vitek*, 438 F.2d at 1158 (finding authority to reverse without remand when "the Secretary's determination is in clear disregard of the overwhelming weight of the evidence"). This court has found where there is little or no likelihood the Commissioner could adduce substantial evidence on remand to support a denial of benefits, reversal and an award of benefits is the appropriate remedy. *See, e.g.*, *Bond v. Saul*, Civ. A. No. 0:18-2674-RMG, 2019 WL 4052429, at *4-5 (D.S.C. August 28, 2019) (awarding benefits where remand for further administrative processing was "a needless act of futility," claimant's application for disability benefits was pending for nearly a decade, and the record was fully developed).

31

The Plaintiff's action for DIB benefits has been pending since January 10, 2013. Her application has already been heard twice by ALJ Georgian, and twice denied. More than seven years later, Plaintiff still has no resolution of her DIB claim. This represents a significant period of time.

Where no useful purpose would be served by a remand and, in fact, justice would not be served, outright reversal is justified. *Coffman*, 829 F.2d at 519. The facts of this case justify such a reversal and an award of benefits. The opinions of Dr. Walters, coupled with other record evidence, constitute substantial evidence to conclude Plaintiff is disabled. According to Dr. Walters, Plaintiff is capable of, at best, only working several hours per week; otherwise she is susceptible to major depressive episodes. R. at 351-52, 885-86, 893. Dr. Walters opined Plaintiff had extreme limitations in the ability to understand, remember, or apply information, the ability to interact with others, the ability to concentrate, persist, or maintain pace, and the ability to adapt or manage oneself. R. at 891. Finally, Plaintiff's depressive episodes have resulted in Plaintiff receiving ECT, a treatment reserved only for those individuals who "do not fully respond to medication management." R. at 886.

Two administrative decisions have failed to demonstrate substantial evidence to reject Dr. Walters' opinions. The continued presence of legal errors in the consideration of this matter after nearly seven years of administrative and legal processes makes clear a remand would serve no useful purpose. Like the court in *Coffman*, the court is convinced if this case were to be remanded to the Commissioner for a rehearing and the Commissioner were to conclude again Plaintiff was not disabled, such a conclusion would not withstand judicial review. *Coffman*, 829 F.2d at 519.

32

Accordingly, the court agrees with the Magistrate Judge Plaintiff is entitled to the benefits she seeks.[19]

## **Conclusion**

For the reasons stated herein, the court adopts the Report of the Magistrate Judge, reverses the decision of the Commissioner, and remands the case with instructions to award benefits.[20]

**IT IS SO ORDERED**.

s/Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
Senior United States District Judge

Columbia, South Carolina
October 19, 2020

---

[19] Because Plaintiff is entitled to an award of benefits, the court need not address Plaintiff's remaining claims of error.

[20] The Clerk of Court will enter a separate judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

33